NORINE O'NEILL, a Minor, by her Mother and Next Friend, Barbara O'Neill, *et al.*, Plaintiffs-Appellees. v. MOULIS CORPORATION, Indiv. and d/b/a Fox Lake Harbor, *et al.*, Defendants-Appellants.

First District (2nd Division) No. 84—0387

Opinion filed December 28, 1984.

Law Offices of Roderick J. Bergin, of Chicago (Deborah L. LaDolce, of counsel), for appellant Moulis Corporation.

Floyd D. Perkins, of Chicago, for appellees.

JUSTICE PERLIN delivered the opinion of the court:

This court granted defendant Moulis Corporation's (the corporation) petition for leave to appeal (87 Ill. 2d R. 306) from an order of the trial court denying the corporation's motion to transfer venue from Cook County to McHenry County.

The record reveals the following relevant facts. The underlying action is for personal injuries allegedly resulting from a boating accident which occurred on Lake Pistakee. The lake is partially in Lake County and partially in McHenry County; no part of the lake is in Cook County. The plaintiffs and individual defendants each reside in McHenry County. The corporation has its principal place of business in Lake County; it maintains no address or phone in Cook County. The defendants Haag have filed a prior action against defendants Moulis Corporation and Paul Walczunski, arising from the same incident, in McHenry County.

The corporation filed a motion to transfer the cause to McHenry

County, contending that since no defendant resided in Cook County and no part of the transaction from which the cause of action arose occurred in Cook County, venue would not lie in Cook County.[1]

Plaintiffs responded that, based on the deposition of corporate officer John Moulis, the corporation was "doing business" in Cook County by virtue of its participation at boat shows held in Cook County and, therefore, venue in Cook County was proper.

The trial court, noting the corporation's participation at the Cook County boat shows, and stating that "the plaintiff has the right to choose the forum whenever it's reasonably possible and available" denied the corporation's motion. We granted leave to appeal.

The sole issue presented is whether venue properly lies in Cook County. More specifically, the issue is whether it can be said that the corporation is "doing business" in Cook County for purposes of venue.

Section 2—101 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—101) pertains to venue generally and provides, in part:

> "Except as otherwise provided in this Act, every action must be commenced (a) in the county of residence of any defendant who is joined in good faith *** or, (b) in the county in which the transaction or some part thereof occurred out of which the cause of action arose."

Section 2—102(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—102(a)) defines the residence of corporations for purposes of venue:

> "Any private corporation *** is a resident of any county in which it has its registered office or other office or is doing business."

Plaintiffs rely on the deposition of corporate officer John Moulis to demonstrate that Moulis Corporation is "doing business" in Cook County and that venue there is consequently appropriate. At his deposition, Moulis testified that Moulis Corporation, d/b/a "Fox Lake Harbor," operates a "complete marina" in Lake County. Its operation there includes "storage, sales, service, accessories and repairs" of boats. It has "about 14 full-time employees, including two full-time salesmen." The corporation has participated in the annual Arlington Park and McCormick Place boat shows in Cook County on an unspeci-

---

[1] The corporation asserts that venue would lie properly in either Lake or McHenry County. In the interest of judicial economy it requested transfer to McHenry County due to the pendency there of the companion case.

fied and irregular basis over the past ten years; "some years we go; some years we don't go."

Boat manufacturers rent space at the boat shows, and boat dealers such as Moulis Corporation pay a fee to them in order to use the space; the fee depends upon the size of the space rented. The manufacturers display boat models at the shows. These models are not sold; an interested customer chooses a model, places an order and leaves a deposit with Moulis. The deposits range from $20 to $1,000. The contract forms used by Moulis provide that they are not "binding on seller or broker unless signed by an officer or sales manager of seller or broker."

Most of the time the contracts are returned to the marina at Fox Lake for approval, although Mr. Moulis testified that he has on occasion approved sales contracts at the boat shows "when all circumstances and items are known." If a buyer wishes to "trade in" a boat, "most of the time we have him bring the boat" to the marina for examination, although in some cases a Moulis employee will inspect the boat at its present location.

The corporation does not deliver the boats it sells; the buyer picks them up at the Fox Lake marina or, in the case of larger boats, the buyer accepts delivery at the factory. Moulis could not recall ever having delivered a boat in Cook County. The corporation obtains financing solely through a Lake County bank for potential buyers who so request.

The record is unclear with respect to the percentage of the corporation's gross annual income which is derived from boat sales as opposed to other services provided by the marina: "From year to year it could vary much. If we lose money on our sales one year, we can make money on our sales next year. We could possibly make money all the time on our service. *** On our storage we do better."

The record is similarly unclear with respect to the percentage of the corporation's sale of boats which are generated at the Cook County boat shows as opposed to total boat sales. When asked how many boats per year Moulis Corporation sells, Moulis stated: "Well, in the past year maybe 100 would be a lot. It really varies." At the 1983 10-day boat show held at Arlington Park, Moulis accepted "about 80" deposits for boats. At the time of the deposition, only 20 of those depositors had received the necessary financing. At the 1983 McCormick Place boat show, Moulis Corporation had received 50 deposits for boats; "very few" of these had resulted in completed sales at the time of the deposition. Participation in Cook County boat shows in other years had resulted in "sometimes none, sometimes two" boat sales.

Moulis Corporation advertises in the Chicago Tribune newspaper.

It is plaintiffs' contention that Moulis Corporation's participation in these Cook County boat shows is "doing business" in Cook County for purposes of venue.

In *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88, our supreme court for the first time interpreted the "doing business" phrase in the venue statute. In that case, the B & O had been sued in Madison County, venue being based on the allegation that the railroad was "doing business" in that county. The court first rejected the contention that for venue purposes the phrase "doing business" should be given the same expansive interpretation as when the same phrase is used as a statement of the test for determining whether a corporation would be amenable to suit in a foreign jurisdiction.

> "A comparison of the literal terms of sections [2—102 and 2—209 of the Code of Civil Procedure] demonstrates that the legislature intended that more extensive contacts with a county are necessary to establish proper venue than are required when the issue is whether the defendant is subject to the jurisdiction of the courts of this State. ***.
>
> We hold, therefore, that in order to establish that a defendant is doing business within a county for purposes of venue, quantitatively more business activity within the county must be demonstrated than where the question is whether the defendant has transacted any business within the State for purposes of service of process pursuant to section [2—209]. The defendant must, in short, be conducting its usual and customary business within the county in which venue is sought." 67 Ill. 2d 321, 329.

The court then rejected the contention that B & O could be found to be doing business in Madison County on the basis of its sales manager's solicitation of business in that county. "The long-standing rule in Illinois is that the mere solicitation of business is not 'doing business' for purposes of jurisdiction. ***. For venue purposes, mere solicitation of business within a county does not establish venue in that county." 67 Ill. 2d 321, 333.

The court then considered the argument that the activities of B & O amounted to more than the mere solicitation of business in Madison County. Recognizing that the railroad's district sales manager testified that he was "assigned" a territory that included Madison County, that he had specific accounts in that county and that he spent approximately three days per month therein, the court held that such activity

was not sufficient to establish that the B & O was doing business in Madison County. "The record reveals that the only service provided by petitioner's employee was merely incidental to the solicitation of shipping business." 67 Ill. 2d 321, 334.

In *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011, the supreme court again addressed the "doing business" term in the venue statute. In *Stambaugh*, plaintiff filed a products liability action against defendant based on injuries suffered when an International Harvester tractor caught fire. A jury trial in St. Clair County resulted in plaintiff's being awarded substantial damages. The supreme court reversed the verdict and remanded the case for transfer to a county of proper venue. The sole issue presented was whether International Harvester was "doing business" in St. Clair County.

The supreme court found that the appellate court had erred in

"considering the situation here to be different from that in *Mosele*. The nature of visits by Harvester personnel within St. Clair County was similar to the infrequent, but regular, visits in *Mosele* by B & O field representatives to Madison County. The defendant sold $2.6 million of its products to St. Clair County dealers in the 1976 fiscal year, but this is not dissimilar from the more than $10 million of business solicited in Madison County by B & O in a five-year period. Too, the sales of Harvester vehicles to St. Clair County dealers constituted approximately 5/100ths of 1% of its annual sales volume—an insignificant fraction of its total sales. It cannot be said that Harvester conducts its 'usual and customary business within the county.' [Citation.]

\* \* \*

Sales by Harvester are on an FOB basis and are completed at its plants outside St. Clair County. Title is transferred to the dealer by issuance of a certificate of origin at the particular plant of manufacture. Harvester has no address or telephone within St. Clair County and pays no taxes there." 102 Ill. 2d 250, 258-59.

The supreme court quoted from prior Illinois decisions which recognized that "proper venue is an important privilege" which is "conferred upon the defendant" and is to be given "great weight." The Illinois venue statute is based upon "a principle of convenience" and is to be "liberally construed in order to effect rather than defeat a change of venue." Finding that the accident there occurred and the plaintiff resided in Brown County, the court held:

"To uphold venue over the defendant in St. Clair County 'would have the effect of negating the principle of convenience upon which section 5 of the [venue] Act is based' and 'would be to allow the institution of actions in locations with little connection with the defendant and with no connection with the activities which give rise to the suit.' [Citation.] ***. The recognized 'principle of convenience' was not served by the filing of the action in a county which had no connection with the accident or the product and was not the residence of either party or of any material witness.

The record shows that the defendant has only an insignificant relationship with St. Clair County. Harvester does not design, manufacture, directly advertise, finance, or sell its products from within St. Clair County. We consider that the circuit court's denial of the defendant's motion to transfer venue from St. Clair County was an abuse of discretion [citation], and we remand for the entry of an order transferring the action to a proper venue." 102 Ill. 2d 250, 262-63.

In the instant case, Moulis Corporation argues that its activities at the two Cook County boat shows demonstrate, at most, the mere solicitation of business and, as held in *Mosele*, the mere solicitation of business in a county does not establish venue there.

Plaintiffs answer that the level of activity at the Cook County boat shows demonstrates that Moulis operates "a complete retail sales operation" there, not merely the solicitation of business.

In our opinion, the *Mosele* and *International Harvester* decisions compel a determination that the corporation here is not "doing business" in Cook County for venue purposes. Notwithstanding plaintiffs' assertions, we do not believe that the evidence reflects that the corporation is conducting its "usual and customary" business in Cook County via its boat show activities. While the corporation does solicit sales at the Cook County boat shows, and advertises in the Chicago Tribune newspaper, it appears that any resulting contract approval, financing, and deliveries are made outside of Cook County. In our opinion, such activities amount only to the solicitation of business, or services incidental thereto, and are not a proper basis for venue. (*Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 368 N.E.2d 88.) While plaintiffs urge that the business derived from the corporation's presence at the Cook County boat shows is a "substantial" portion of its total income, the record does not support this claim.

Recognizing that venue is a "valuable privilege conferred upon

the defendant" which is to be given "great weight," we hold that the trial court erred in denying Moulis Corporation's motion for a change of venue to McHenry County. Under the present facts we find that venue is proper in that county, and we remand this case for entry of an order transferring this cause to McHenry County.

Reversed and remanded with directions.

HARTMAN, P.J., and STAMOS, J., concur.