CRAIG BARENBRUGGE, Special Adm'r of the Estate of Renee Barenbrugge, Deceased, Plaintiff-Appellee, v. NANCY RICH, M.D., Defendant-Appellant.

First District (2nd Division)   No. 85—260

Opinion filed March 18, 1986.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Anthony J. Alholm and Stephen R. Swofford, of counsel), for appellant.

Albert F. Hofeld and Howard Schaffner, both of Hofeld & Schaffner, of Chicago, for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
Defendant doctor appeals the judgment entered against her after a jury trial in a medical malpractice suit which alleged that she and another physician, not involved in this appeal, negligently failed to diagnose breast cancer while it was still treatable. On appeal we are asked to decide whether: (1) the circuit court erred in refusing to transfer venue; and (2) a new trial should be ordered because: (a) the circuit court failed to issue instructions on contributory negligence; (b) contrary to indications at trial, two of plaintiff's expert witnesses received compensation for their testimony; (c) the arousal of the jury's passion and prejudice was evident from its verdict.

Decedent, Renee Barenbrugge, age 28, died during the trial, and her husband, Craig, was appointed special administrator of her estate. For purposes of simplicity, we shall apply the term "plaintiff" to Renee.

Evidence in the record as to the onset and history of plaintiff's disease is conflicting; however, there is evidence upon which the jury could have based its verdict that in November 1978, the then 22-year-old plaintiff visited defendant, Dr. Nancy Rich, an obstetrician-gynecologist, for the first time for a routine premarital examination. Plaintiff then had no complaints with respect to her breasts. Her examination was normal. She returned to defendant on February 27, 1979, and complained of pain and a lump in her left breast. Dr. Rich testified both that she "felt a lump of breast tissue" and that "[i]t

was normal breast tissue." And again, "I did not feel a mass. I felt a lump of breast tissue." Still further, "*** I decided it was absolutely normal in every way." She described this condition as normal thickening of tissue, although at trial two experts asserted that thickening is not normal. Plaintiff complained that she was experiencing breast pain at this time. Dr. Rich's records did not contain this complaint. Dr. Lawrence Gunn, a surgeon to whom Dr. Rich later referred plaintiff, recorded on January 31, 1980, that plaintiff experienced breast pain for one year, which would encompass the February 27, 1979, visit with Dr. Rich.

On July 16, 1979, plaintiff returned to Dr. Rich for a regular examination and for birth control pills. She asserted that she complained of a lump in her left breast and pain on this visit; Dr. Rich's record indicates no such complaint. Plaintiff's next visit was again six months later on January 17, 1980. Plaintiff expressed concern about her breast at this time. The records of Dr. Rich for that visit contain no description of plaintiff's complaints, except that she was "very worried." The record does show an entry "probable fibrocystic." Dr. Rich then referred plaintiff to Dr. Gunn for a second opinion regarding plaintiff's breasts. Plaintiff saw Dr. Gunn on January 31, 1980, and complained of breast pain. There is a question as to whether she complained of other irregularities. Dr. Gunn observed that plaintiff's left breast, including the areola, was 25% larger than the right, and that the veins in the left breast were prominent. No mammogram was ever performed on or ordered for plaintiff by either defendant or Dr. Gunn.

On May 31, 1980, plaintiff called defendant complaining of severe abdominal pain. They met at Hinsdale Hospital, and since plaintiff was also complaining of the lump and breast pain, defendant performed a breast exam. Dr. Rich found irregularities which led her to believe that plaintiff's breast was malignant. Two days later, on June 2, 1980, plaintiff saw Dr. Gunn who performed a needle biopsy in the area of the lump, which detected cancer.

Plaintiff was admitted to the hospital and on June 3, 1980, Dr. Gunn performed a surgical biopsy to determine the extent of the disease. A tissue sample taken from the supra-clavicular area was sent to pathologists for analysis. Later that date a report on frozen tissue was sent to Dr. Gunn indicating no malignancy. He reported to plaintiff that the node he had felt was not cancerous and that a mastectomy would be performed. The next day Dr. Gunn performed a radical mastectomy on plaintiff, a decision made without the benefit of the pathologists' report on a permanent section of tissue which did

indicate the advance of cancer. After the mastectomy plaintiff underwent radiation and chemotherapy. She later underwent further surgery performed by other physicians at other institutions.

On April 20, 1981, plaintiff filed a medical malpractice action against Drs. Rich and Gunn in Cook County circuit court, alleging negligent failure to diagnose her cancer. Numerous amendments were made to her complaint. Other defendants were joined, including certain individual pathologists and their professional corporation, Du Page Pathology Associates (DPA).

The cause ultimately went to trial on September 26, 1984. Plaintiff's expert testified that her cancer could have been detected by mammography 1½ years before it was removed and, if it had been detected in February 1979, her chances of cure would have been 95%, but with the passage of time, survival chances decreased until, by the time of actual diagnosis, her prognosis was very grave. Plaintiff died while the trial was in progress on October 13, 1984. A settlement was reached with Dr. Gunn in the amount of $900,000 and with DPA for $500. The settlement with DPA was assertedly based upon "either a $50,000 loan agreement or, if a settlement or verdict in excess of this amount was achieved against any defendant then a payment of $500." The jury found Dr. Rich liable, and the circuit court entered judgment in the amount of $2,099,500, from which this appeal proceeds.

## I

With respect to the venue issue, we are limited to an examination of the record to determine whether the circuit court abused its discretion in denying defendant's motion to transfer venue from Cook to Du Page County (*Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011), and we must review the procedural facts in greater detail than is ordinarily required. Plaintiff's original complaint, filed on April 20, 1981, named Drs. Rich and Gunn as defendants, both of whom were Du Page County residents. In her first amended complaint, plaintiff named Eli Lilly and Company (Eli Lilly), a Cook County corporation, as a defendant alleging that an Eli Lilly product had caused her injury, thus providing the only basis for fixing venue in Cook County. Ill. Rev. Stat. 1983, ch. 110, par. 2—101.

Dr. Rich filed a motion to transfer venue on the ground that Eli Lilly was not joined in good faith. An order was entered on January 22, 1982, granting the motion and transferring the cause to Du Page County; however, this order was vacated on February 16, 1982, on

plaintiff's motion alleging that the transfer order had been entered *ex parte*. Dr. Rich then filed a motion with supporting memorandum to sever Eli Lilly and transfer the cause against her and Dr. Gunn to Du Page County. This motion was granted by the circuit court on May 25, 1982, and provided for transfer of the cause against the doctors to Du Page County effective June 9, 1982.

Before the effective transfer date, plaintiff filed an emergency motion seeking to join additional defendants, preserve certain evidence and to vacate the transfer order of May 25, 1982. Among other defendants, plaintiff sought to add individual pathologists, Drs. Reuben Ramkissoon, Clifford Reiber and Lucito Gamboa, and their professional corporation DPA. DPA had a registered agent in Cook County. Dr. Gamboa was the pathologist who performed diagnostic tests at Dr. Gunn's request. The circuit court granted plaintiff's emergency motion to add defendants and preserve the evidence. Two months later, on August 2, 1982, plaintiff voluntarily dismissed Eli Lilly. On September 2, 1982, the circuit court granted plaintiff's motion to vacate the May 25 transfer of venue and simultaneously denied motions filed by the newly added defendants for transfer.

By June of 1984, the causes of action against the newly added defendants other than the pathologists and their corporation were either dismissed on their motion or on plaintiff's motion. Remaining in the case as defendants were Drs. Rich and Gunn, the individual pathologists, and their corporation. On July 9, 1984, Dr. Rich's petition for leave to file another motion for transfer of venue was denied.

*Voir dire* of the jury was conducted on September 26 and 27, 1984. On September 27, 1984, an order was entered by the circuit court stating that on plaintiff's motion one of the pathologists and DPA were dismissed. The next day, opening statements were made and plaintiff testified. On October 1, 1984, plaintiff moved to vacate the dismissal with respect to DPA on the ground that the order was drawn by opposing counsel and it was through inadvertence that DPA was included in the order. The circuit court vacated the order and accepted plaintiff's explanation that dismissal of DPA was a mistake. On the basis of DPA's residence, the circuit court found venue proper in Cook County. Thereafter, the trial proceeded to verdict.

Defendant maintains that the foregoing history demonstrates that plaintiff did not join either Eli Lilly or DPA in good faith and with probable cause of obtaining judgment (Ill. Rev. Stat. 1983, ch. 110, par. 2—101) and that not until the order to sever Eli Lilly was entered did plaintiff name DPA, the only other Cook County nexus, as a defendant. Defendant stresses that plaintiff did not vigorously

pursue her claim against the pathologists or their corporation, noting that during *voir dire* no reference was made to DPA and in plaintiff's opening statement she never mentioned the cause against the pathologists or DPA. The individual pathologists moved for summary judgment on the basis that they did not deviate from the applicable standard of care. Their motion was defeated by an affidavit of plaintiff's mother relating a conversation between plaintiff and Dr. Gunn in which Dr. Gunn allegedly indicated his reliance on Dr. Gamboa's analysis in making the decision to perform a radical mastectomy; however, the circuit court in denying summary judgment commented on the weakness of plaintiff's evidence against the pathologists.

In support of her position defendant cites *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011, for the proposition that the venue statute should be liberally construed to effect rather than defeat change in venue. She also cites as instructive *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 301 N.E.2d 729, *cert. denied* (1976), 424 U.S. 943, 47 L. Ed. 2d 349, 96 S. Ct. 1411, and *Green v. Unity Container Corp.* (1955), 7 Ill. App. 2d 215, 129 N.E.2d 458. In both of these cases, reviewing courts found forums inappropriate after focusing on the fact that, as here, the resident defendants were joined only after rulings adverse to plaintiffs and the continuance of the action was threatened.

The record here reveals, however, numerous and continuing efforts by plaintiff to develop a case against the pathologists and DPA, principally on the bases that the pathologists and DPA: (1) failed to advise Dr. Gunn that lymph node tissue essential to making a diagnosis had not been sent by him to the pathologists for analysis and he should send diagnostic tissue; and (2) the loss of one of the frozen tissue slides, leading Dr. Gunn to perform a radical, rather than a modified mastectomy, resulting in further injury. At trial, Dr. Gamboa testified that he expected to receive additional tissue from Dr. Gunn for analysis, but when it was not forthcoming he did not request it. At the deposition of plaintiff's expert witness in Pittsburgh, who was engaged to establish negligence against the pathologists' corporation, the expert expressed the opinion that Dr. Gamboa deviated from the applicable standard of care when he failed to make sufficiently clear to Dr. Gunn that his analysis was based only on frozen tissue. Defendant argues that Dr. Gunn knew Dr. Gamboa had not examined diagnostic tissue at the time of his report, yet he proceeded with the radical mastectomy because of the proximity of plaintiff's tumor to her muscle; however, plaintiff's expert asserted that

had the proper information been given to Dr. Gunn, the latter could have secured a lymph node for pathological examination which would have revealed the presence or absence of metastasis of the tumor since, as another expert noted, "proceeding with a radical mastectomy within the face of disseminated disease would not be appropriate," as was done in this case. Regarding the second theory of liability, plaintiff relies on testimony elicited from Dr. Gamboa that tissue may have slipped off of one of the slides, and that Gamboa did not explain why another slide had been substituted in its place without being disclosed.

Also, plaintiff posits that it was necessary to join the pathologists and DPA to foreclose a defense by Dr. Gunn in which he might claim reliance on the pathologists' analysis. Defendant suggests that Dr. Gunn could not have escaped liability because he was the one who decided to perform the surgery; however, as plaintiff argues, at the outset of trial it was not entirely clear whether Drs. Rich and Gunn would be found liable and, therefore, the pathologists and DPA might have proved to be her only source of remedy. Plaintiff maintains that only as the trial progressed did it become clear that her case against Drs. Rich and Gunn was a good one, on which plaintiff then concentrated, which explains whatever paucity of evidence against the pathologists and DPA can be said to have existed. It is asserted further that plaintiff sought to secure an evidence deposition for use against the pathologists but that by the time it was secured, plaintiff was foreclosed from using it since she had since rested. Plaintiff urges that her reason for proceeding to trial without first securing the evidence deposition was her worsening condition.

Plaintiff explains the timing of the joinder of the pathologists and DPA, claiming they were not joined earlier because their joinder was the result of an on-going investigation, and the emergency nature of her motion to join these defendants was not prompted by the order transferring the case to Du Page County, but because the statute of limitations was about to expire. In addition, she asserts, the motion sought at the same time to join defendants other than the pathologists and DPA and it requested an order to preserve certain evidence. Such explications are not without basis in the record.

The cases relied upon by defendant are distinguishable. In *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 464 N.E.2d 1011, the latter had no registered agent in the county in which it was sued, as did DPA, thereby raising the question of "doing business" as the basis for venue, an issue which is irrelevant here. In *Green v. Unity Container Corp.* and *Adkins v. Chicago,*

*Rock Island & Pacific R.R. Co.* involved were the joinder of defendants against whom recovery was unlikely or barred by previous bankruptcy proceedings (*Green v. Unity Container Corp.* (1955), 7 Ill. App. 2d 215, 221, 129 N.E.2d 458; *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 516-17, 301 N.E.2d 729), issues not present here.

More on point are *Young v. Cerniak* (1984), 126 Ill. App. 3d 952, 467 N.E.2d 1045, and *Novak v. Thies* (1980), 89 Ill. App. 3d 991, 412 N.E.2d 666, in which trials were held in Cook County on the bases of the residences of certain corporations. In those cases, defendants failed to preserve the venue issue for review; however, the appellate courts nevertheless analyzed circuit court findings of good faith joinder. In each case, the resident corporation moved for and was granted a directed verdict. The appellate courts found that directed verdicts and the plaintiffs' failure to present evidence did not necessarily establish bad faith joinder. (*Young v. Cerniak* (1984), 126 Ill. App. 3d 952, 964, 467 N.E.2d 1045; *Novak v. Thies* (1980), 89 Ill. App. 3d 991, 993, 412 N.E.2d 666.) The court in *Novak v. Thies* stated that failure to present evidence might be due to flexible trial strategy.

■ In view of the present plaintiff's pursuit of the pathologists and DPA, and her explanation of the procedural history of this case, and case law, we cannot say that the circuit court abused its discretion in denying defendant's motion to transfer or erred in finding that there was no bad faith joinder. It may also be observed that there is no appreciable difference in convenience to any party between proceeding in Cook County or proceeding in adjoining Du Page County in the present case. For example, the sole expert called by defendant was a resident of Cook County and one of defendants, Dr. Gamboa, was employed on the staff of a local Chicago hospital where he was served with summons.

## II

Defendant next contends that the circuit court erroneously failed to instruct the jury on contributory negligence (Illinois Pattern Jury Instruction (IPI), Civil, No. A10.03 (2d ed. 1971)) in light of evidence of plaintiff's delay in notifying Drs. Rich and Gunn of a physical change in her breast in April 1980. Contributory negligence is a damage-reducing issue and can be raised in medical malpractice cases. (*Asher v. Stromberg* (1966), 78 Ill. App. 2d 267, 276, 223 N.E.2d 300; *Biundo v. Christ Community Hospital* (1982), 104 Ill. App. 3d 670, 432 N.E.2d 1293.) Here, she maintains that because plaintiff's

theory of liability was delay in diagnosis, any delay occasioned by plaintiff raises a serious issue of contributory negligence upon which the jury should have been instructed.

The "Notes on Use" for IPI Civil 2d No. A10.03 require that the jury also be given IPI Civil 2d No. 11.01, which tells the jury that plaintiff's negligence must proximately contribute to cause the injury, which was not given. For the jury to be correctly instructed, both factors, contributory negligence and proximate cause, must be considered. (*Blacconeri v. Aguayo* (1985), 132 Ill. App. 3d 984, 478 N.E.2d 546.) Also, IPI Civil 2d No. 33.01 was submitted by defendant which employs the term "ordinary care"; however, no instruction was offered defining this term. (*Rickard v. Dover Elevator Co.* (1984), 126 Ill. App. 3d 438, 441, 467 N.E.2d 386.) Clearly, defendant was entitled to have the jury properly instructed on the principal issues in the case. (*Schlink v. Bass* (1972), 5 Ill. App. 3d 527, 283 N.E.2d 340.) It is just as clear that the circuit court is not bound to give erroneous or incomplete instructions. (*Sweeney v. Max A.R. Matthews & Co.* (1970), 46 Ill. 2d 64, 69, 264 N.E.2d 170.) The instructions tendered must accurately state applicable law. (*Schultz v. Republic Insurance Co.* (1984), 124 Ill. App. 3d 342, 345-46, 464 N.E.2d 767; *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 371 N.E.2d 1228; *Kinka v. Harley-Davidson Motor Co.* (1976), 36 Ill. App. 3d 752, 344 N.E.2d 655.) We find no error in the circuit court's refusal to give defendant's proposed instructions. Defendant's reliance upon *Burnett v. Caho* (1972), 7 Ill. App. 3d 266, 285 N.E.2d 619, is misplaced. There the court *gave* what defendant conceived to be an erroneous plaintiff's instruction, which defendant was obligated to cure by amendment. Here, the court properly *refused* to give the erroneous instruction. Plaintiff was under no obligation at that point to cure defendant's omission in order for the court to change its ruling.

Of equal importance, the experts' testimony established that breast cancer grows in five stages, with a specific percent of curability in each stage, the last three stages decreasing in curability rates. The five stages were traversed in plaintiff's body through a period of 1½ years; however, no expert testified as to the stage to which plaintiff's cancer had developed by April or May of 1980. In the absence of such evidence, no basis in the record appears upon which to postulate contributory negligence on plaintiff's part in having not seen the doctor in April rather than May of 1980, particularly in light of her history of regularly consulting with defendant periodically since February 27, 1979. No error appears in failing to give

defendant's proposed instructions from an evidentiary base as well.

## III

Defendant identifies error in the circuit court's denial of her motions for new trial on the basis of newly discovered evidence that contrary to indications at trial, two of plaintiff's experts received substantial compensation for their testimony. She notes that the list of expenses filed in connection with the settlement with Dr. Gunn reveals expenditures to these experts of $17,000 and $15,200, for their review of case materials, depositions and trial testimony. Defendant emphasizes the profound impact which expert medical testimony may have on a jury (*Sears v. Rutishauser* (1984), 102 Ill. 2d 402, 406-07, 466 N.E.2d 210), and maintains that if the true facts of reimbursement had been known to the jury in the case, it might have given different weight to the testimony of those experts.

■ The evidence discovered after the trial was an itemization of expenditures showing the foregoing compensation to be paid to plaintiff's experts among other expenses. Plaintiff demonstrated to the circuit court, however, that no payment was made to the individual experts; rather the payments were made directly to their employer, M.D. Anderson Hospital and Tumor Institute, as reimbursement for their salaries paid by the Institute and that compensation was directed to the Institute itself for the time the experts devoted to plaintiff's case. Compensation was not made as professional fees paid to the witnesses for their testimony. Newly discovered evidence which, as here, serves merely to impeach or discredit a witness, does not constitute grounds for a new trial in any event. (*Tuttle v. Fruehauf Division of Fruehauf Corp.* (1984), 122 Ill. App. 3d 835, 839, 462 N.E.2d 645; *Bianchi v. Board of Fire & Police Commissioners* (1976), 41 Ill. App. 3d 998, 999, 354 N.E.2d 916.) To obtain a new trial on this ground, defendants would have had to have established that the newly discovered evidence would have prevented entry of judgment against her. (*Lubbers v. Norfolk & Western Ry. Co.* (1984), 105 Ill. 2d 201, 210, 473 N.E.2d 955.) The circuit court's denial of a new trial on the basis of this newly discovered evidence was correct.

## IV

■ In her final argument, defendant contends that the verdict was a result of sympathy, passion and prejudice stemming from plaintiff's death during the trial, the admission of a videotape depicting a day in the life of plaintiff after her operation and other photo-

graphic evidence, and the volume of testimony detailing plaintiff's suffering, the cumulative effect of which is claimed to have tainted the jury's verdict and requires a new trial. This contention is not persuasive.

In the course of *voir dire,* numerous and repeated questions were asked of prospective jurors as to possible sympathy created by plaintiff's condition and impending death. The jury was thereafter accepted by defendant. Also, during the opening statement by counsel for the pathologists, plaintiff's impending death was mentioned. In light of such juror qualification and its preparation for plaintiff's condition at trial and her death, the jury's verdict cannot be said to have been tainted.

█ Videotape and photographs are admissible if their probative value is not outweighed by their inflammatory effect. (*Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519-20, 468 N.E.2d 1228.) No assertion is made here that the evidence was not an accurate portrayal of plaintiff's condition and circumstances; its probative value is not seriously questioned. The insistence that such evidence is merely cumulative is not persuasive. (*Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 500-01, 322 N.E.2d 5.) Videotapes similar to the tape admitted in the present case have been found admissible in other States. (*Pisel v. Stamford Hospital* (1980), 180 Conn. 314, 323-24, 430 A.2d 1, 8; *Caprara v. Chrysler Corp.* (1979), 71 App. Div. 2d 515, 522-23, 423 N.Y.S.2d 694, 698-99, *aff'd* (1981), 52 N.Y.2d 114, 436 N.Y.S.2d 251, 417 N.E.2d 545; *Air Shields, Inc. v. Spears* (Tex. Civ. App. 1979), 590 S.W.2d 574, 580.) The appearance of plaintiff's son in this evidence was proper in that it was established that caring for him was part of plaintiff's daily routine. (*Pisel v. Stamford Hospital* (1980), 180 Conn. 314, 430 A.2d 1.) Therefore, the introduction of this evidence was not error.

For the foregoing reasons, we find no basis upon which to reverse the jury's verdict or the judgment of the circuit court. Accordingly, we affirm.

Affirmed.

BILANDIC, P.J., and SCARIANO, J., concur.