(No. 61899.—

VERA GARDNER, Ex'r, Appellee, v. INTERNATIONAL HARVESTER COMPANY, Appellant.

*Opinion filed October 17, 1986.*

CLARK, C.J., specially concurring.

William E. McDaniels and Carolyn H. Williams, of Williams & Connolly, of Washington, D.C., and Norman S. London, of London, Greenberg & Pleban, of St.

Louis, Missouri (John A. Rupp, of Chicago, of counsel), for appellant.

Cook, Shevlin, Keefe & Chatham, Ltd., of Belleville (Bruce N. Cook, of counsel), for appellee.

JUSTICE MILLER delivered the opinion of the court:

The plaintiff, Vera Gardner, brought this action in the circuit court of St. Clair County for damages for personal injuries suffered by her husband, Homer E. Gardner. International Harvester Company, one of the defendants named in the action, filed a motion for a change of venue, and the motion was denied. The appellate court affirmed that decision (133 Ill. App. 3d 665), and we allowed Harvester's petition for leave to appeal (103 Ill. 2d R. 315(a)).

The plaintiff's decedent suffered burns in a tractor fire on October 6, 1980, and he later died from his injuries. The accident, which occurred on the Gardners' farm near Maroa, in Macon County, was allegedly caused by a defective fuel cap manufactured by Harvester. The plaintiff commenced her action in St. Clair County in September 1982, naming as defendants Harvester and the companies that manufactured the tractor and that sold the gasoline. Following a hearing, the circuit judge denied Harvester's motion for a change of venue, finding that venue was proper in St. Clair County because the company was doing business there.

Harvester was permitted to appeal the circuit court's ruling on the venue motion (see 87 Ill. 2d R. 306(a)(iv)), and the appellate court affirmed that decision, with one justice dissenting. The appellate court believed that sufficient circumstances were shown in this case to establish that the company was in fact carrying on its usual and customary business in St. Clair County. In this re-

gard, the appellate court distinguished *Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, in which this court held that venue would not lie against Harvester in St. Clair County. In a related matter that is not involved in this appeal, the appellate court also affirmed the circuit judge's denial of a separate motion by Harvester to dismiss this action on grounds of *forum non conveniens*; as the appellate court noted, the alternative forums suggested by Harvester were in Illinois, and the action here was commenced before the intrastate application of the doctrine became available. See *Torres v. Walsh* (1983), 98 Ill. 2d 338.

Venue is proper in the county of residence of any defendant or in the county where the cause of action arose. (Ill. Rev. Stat. 1985, ch. 110, par. 2—101.) The plaintiff's cause of action did not arise in St. Clair County, and the one other defendant on whom the plaintiff relies in alleging venue there also has contested that, although apparently no ruling has been made on the motion. In this regard, it may be noted that waiver of improper venue by one defendant does not necessarily bind other defendants. (*Hines v. Dresser Industries, Inc.* (1985), 137 Ill. App. 3d 7.) In this case, then, venue depends on Harvester, and the only question before us is whether the company is a resident of St. Clair County. With respect to the residence of corporations, section 2—102(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—102(a)) provides that "any foreign corporation authorized to transact business in this State is a resident of any county in which it has its registered office or other office or is doing business." Harvester is a foreign corporation authorized to do business in the State. Its registered office is in Chicago, and although it has a number of manufacturing plants and other offices in Illinois, none of them are located in St. Clair County. In this case, venue is proper in St. Clair County only if

Harvester is "doing business" there. "Doing business," as the phrase is used in the venue statute, requires that the defendant "be conducting its usual and customary business within the county in which venue is sought." *Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 329.

*Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, involved an action similar to the one here. The plaintiff in that case brought suit against Harvester in the circuit court of St. Clair County to recover for personal injuries stemming from a tractor fire that occurred in Brown County in 1975. Harvester's motion for a change of venue was denied, and the case proceeded to trial. On appeal, this court reversed a judgment in the plaintiff's favor, holding that venue was improper in St. Clair County. In reaching that conclusion, *Stambaugh* considered an array of evidence regarding the sale of Harvester's products through independent dealers in that county, and the court held that the nature and extent of the activity did not warrant a finding that the company was carrying on its usual and customary business there.

The plaintiff argues that *Stambaugh* is distinguishable, and in her brief in this court she refers to some 10 circumstances that, she contends, support the finding of the courts below that venue is proper in St. Clair County. The plaintiff makes the following assertions regarding Harvester's activities in St. Clair County: (1) Harvester sold $2.6 million worth of products to dealers in the county; (2) Harvester's sales representatives visit the dealers there; (3) under a cooperative advertising program Harvester will pay half of a dealer's costs of advertisements of Harvester products; (4) purchases of products by St. Clair County dealers are financed by a wholly owned subsidiary of Harvester, International Harvester Credit Corporation; (5) Harvester representatives

sell products on their visits to the St. Clair County dealers; (6) during the period from 1979 to 1982, Harvester purchased a total of more than $3 million in products from companies located in St. Clair County; (7) Harvester requires the St. Clair County dealers to perform warranty work on Harvester products; (8) Harvester mails rebate checks directly to customers living in St. Clair County or who have purchased Harvester products from dealers there; (9) Harvester operates a retrofit program through the dealers to warn owners about the dangers of the Harvester triple-baffle fuel cap and to replace those caps with new ones; and (10) Harvester accepts sums payable to its financing subsidiary, International Harvester Credit Corporation, which does business in the county. The plaintiff contends that these matters, taken together, justify the conclusion that venue is proper in St. Clair County because Harvester is in fact engaging in its usual and customary business there.

We do not believe that the circumstances cited by the plaintiff warrant a result different from that reached in *Stambaugh*. As the plaintiff acknowledges, a number of these circumstances were considered by the court in that case. There the court noted that during its 1976 fiscal year Harvester sold about $2.6 million worth of products to dealers in the county, which was only a small part of the company's annual sales. From the information presented here, it appears that Harvester's sales to St. Clair County dealers in the 1982 fiscal year were $2,250,000. *Stambaugh* also expressly mentioned several other of the circumstances relied on here by the plaintiff. The court noted the sales calls made by Harvester's representatives on the St. Clair County dealers, the existence of the cooperative advertising program, and the financing work performed by Harvester's financing subsidiary.

The other circumstances raised by the plaintiff here

in support of fixing venue in St. Clair County are, we believe, merely incidental to activities that were considered by the court in *Stambaugh*. Contrary to the plaintiff's assertion, Harvester sales representatives do not make sales of the company's products on their visits to the St. Clair County dealers; rather, the representatives solicit orders, and the sales are completed elsewhere. Solicitation of business in a county does not establish venue there. (*Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 333.) Nor do we believe that Harvester's purchases from St. Clair County suppliers show that the company is engaged in business there. Harvester buys the materials for use in its business of designing, manufacturing, and marketing tractors, trucks, and other machines, and the purchases are but a necessary incident of that. See *Hartung v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 816, 819-20.

The warranty work and the gasoline-cap retrofit program, which the plaintiff also mentions, do not alter the basic relationship, which *Stambaugh* described, between Harvester and the independent dealers in St. Clair County who carry the company's products. In *Stambaugh* the court observed that in the county five dealerships—a number that has since fallen to three—were selling Harvester products; all the dealers were independent of Harvester, and they were free to sell the products of competitors. Harvester's sales to the dealers were made f.o.b. its plants and completed at locations outside St. Clair County. There is no indication here that the nature of the agreement between Harvester and the independent dealers has changed since that time. The evidence shows that the dealers merely abide by the terms of their contract, which require them to perform certain activities, not as Harvester's agents but rather as independent contractors. The contracts disavow any agency relationship with the dealers. It may be noted that the

warranty work mentioned by the plaintiff here was also being performed at the time of *Stambaugh*; the gasoline-cap safety program did not begin until later. Moreover, that Harvester sends rebate payments to residents of St. Clair County or to persons who have made purchases from dealers in St. Clair County is, we believe, akin to promotional activity incidental to the company's business. See *DeGerlia v. First Bank & Trust Co.* (1984), 121 Ill. App. 3d 658.

As a final matter, the plaintiff refers to Harvester's acceptance of amounts that are payable to its financing subsidiary, International Harvester Credit Corporation. The two use a joint billing system, but in our view this does not alter the conclusion in *Stambaugh* that the subsidiary does not act as Harvester's legal agent in St. Clair County and that "Harvester and [International Harvester Credit Corporation] are separate corporate entities in different businesses, having distinct objectives" (*Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 260). The record here shows that the payments in question are not pooled, as the plaintiff contends, but rather are kept separate.

We see no reason in this case to reach a result different from that in *Stambaugh*. The plaintiff has not shown that Harvester's activity in St. Clair County has changed in the intervening period, nor has she presented circumstances not considered in *Stambaugh* that would support a different result. As in *Stambaugh*, then, we conclude here that "Harvester does not design, manufacture, directly advertise, finance or sell its products from within St. Clair County" (*Stambaugh v. International Harvester Co.* (1984), 102 Ill. 2d 250, 263) and that for purposes of venue Harvester is not engaged in its usual and customary business in that county.

For the reasons stated, the judgments of the circuit and appellate courts are reversed, and the cause is re-

manded to the circuit court of St. Clair County for further proceedings consistent with this opinion.

*Reversed and remanded.*

CHIEF JUSTICE CLARK, specially concurring:

I concur only on the basis of *stare decisis*. I believe the instant case is on all fours with *Stambaugh v. International Harvester* (1984), 102 Ill. 2d 250, and *International Harvester v. Goldenhersh* (1981), 86 Ill. 2d 366. I dissented in *Stambaugh* because this court's holding in that case was inconsistent with its earlier holding in *International Harvester*.

In *International Harvester*, this court declined to issue a writ of *mandamus* and allowed a lawsuit against International Harvester to proceed in St. Clair County. This court stated:

> "Five independent retail dealers which sell petitioner's [International Harvester's], products are located in St. Clair County. Petitioner reimburses the dealers for half of their advertising expenses. Various sales representatives, who are employees of petitioner, regularly visit the dealers to provide a wide range of assistance and service. Two of the dealers lease computer terminals from petitioner which link them to petitioner's warehouse for automatic inventory control and reorder of spare parts. ***
>
> *** Dealer contracts, which are entered into with petitioner annually in St. Clair County, give petitioner the right to review dealer performance. Dealers are required to honor warranties on petitioner's products, and services performed by the dealers under such warranties are reimbursed by petitioner. Each dealer sells petitioner's spare parts, which are delivered regularly by petitioner in St. Clair County." 86 Ill. 2d 366, 371.

Then in *Stambaugh*, this court held that venue did not lie in St. Clair County, despite the fact that the two cases involved the same corporation, the same trial judge, and the same venue question. Acknowledging that

*International Harvester* left open the possibility that a different venue determination could be made by the "normal appeal process," as in *Stambaugh*, rather than by *mandamus*, as in *Harvester*, I dissented in *Stambaugh* because "such inconsistent signals only exacerbate the problem of crowded dockets and interminable appeals which vex our judicial system." 102 Ill. 2d 250, 265.

In my dissent in *Stambaugh*, I disagreed with the majority's characterization of Harvester's activities in St. Clair County as "incidental." In the instant case, again, I believe that since Harvester's products have been marketed and used for many years in St. Clair County, and such operations are not incidental to some other activity that keeps Harvester in business, Harvester is doing business in St. Clair County for purposes of venue.

I specially concur in this case because I agree with a statement made by Mr. Justice Traynor, former chief justice of the California Supreme Court, which is also quoted in my special concurrence in *People v. Lewis* (1981), 88 Ill. 2d 129, that once a judge has dissented, he is obligated to follow the law as pronounced. Justice Traynor wrote:

> "Paradoxically the well-reasoned dissent, aimed at winning the day in the future, enhances the present certainty of the majority opinion, now imbedded in the concrete of resistance to the published arguments that beat against it. For that very reason the thoughtful dissident does not find it easy to set forth his dissent.
>
> Once he has done so he has had his day. He should yield to the obligation that is upon him to live with the law as it has been stated. He may thereafter properly note that he is concurring under compulsion, abiding the time when he may win over the majority, but he should regard dearly enough the stability of the law that governs all the courts in the state not to renew the rataplan of his dissent. When the trial court properly follows the

declared law and is duly affirmed by the intermediate court, he should not vote for a hearing on the basis of his dissent. Conversely, should the trial court be reversed on the basis of his dissent, he should vote for a hearing. When the court has granted a hearing in a case with multiple issues, including the ancient one, and there is a nucleus of dissenters on other issues, he should not cast his vote on the basis solely of his ancient dissent to achieve a reversal or affirmance that would not otherwise have materialized. To do so would only work mischief. The judge's responsibility to keep the law straight is not less when he is a dissenter." Traynor, *Some Open Questions on the Work of State Appellate Courts*, 24 U. Chi. L. Rev. 211, 218-19 (1957).

Since I believe there to be great wisdom in the above-quoted statement of Justice Traynor, I respectfully concur in the judgment of the majority.