153 A.3d 968

VINCENT CREPY, PLAINTIFF, v. RECKITT BENCKISER, LLC, RECKITT GROUP PLC, RECKITT BENCKISER CORPORATE SERVICES, LTD., AND DOES 1–25, DEFENDANTS.

Superior Court of New Jersey
Law Division
Essex County

Decided: February 19, 2016

420

*Paul Bishop* and *David Klein* for plaintiff (*Brach Eichler, LLC*, and *Kennedy Berg LLP*, attorneys).

*Vincent N. Avallone* for defendants RB Group PLC, RB Corporate Services, Ltd., and RB, LLC (*K & L Gates LLP*, attorneys).

MITTERHOFF, J.S.C.

## STATEMENT OF FACTS

This matter comes before the court by way of defendant's renewed motion to transfer venue from Essex County to Morris County. Plaintiff's claims arise out of the alleged wrongful termination of his employment as Senior Vice President of Supply, Latin America, North, South and Southeast Asia, Australia, and

New Zealand by defendant Reckitt Benckiser LLC ("RB LLC") in February, 2012. This case arises out of a dispute over plaintiff's employment at Reckitt Benckiser ("RB"). In 2007, plaintiff began employment in Parsippany, New Jersey, for defendant RB LLC. The terms of that employment agreement stated that RB LLC could not terminate plaintiff's employment without providing six months' notice. However, the employment contract also allowed RB LLC to immediately terminate plaintiff if he engaged in "gross misconduct," or was "guilty of any fraud, dishonesty, or such other conduct."

In November 2011, Amadeo Fasano ("Fasano"), Executive Vice President of RBCS, RB LLC's parent corporation and plaintiff's boss, informed plaintiff during a videoconference that his position at RB LLC was being eliminated. Simon Nash ("Nash"), Senior Vice President of Reckitt Benckiser Corporate Services (RBCS), RB LLC's parent company, allegedly acting on behalf of RB Group and RB LLC, offered plaintiff a new position ("Senior Vice President LAPAC") requiring him to move to Singapore. After consulting with his family and some further negotiations, plaintiff signed the final offer (letter of intent) on December 9, 2011. The letter of intent contained a section identical to the RB LLC employment agreement, allowing plaintiff's position to be terminated without compensation or notice for misconduct.

Prior to moving to Singapore, plaintiff inquired about the status of his United States permanent residency card (green card) with a New York City immigration lawyer, Ted Chiappari ("Chiappari"), who represented both plaintiff and defendant in connection with the proposed transfer. Plaintiff alleges that Chiappari informed him that as long as plaintiff's wife maintained her green card, plaintiff's children would be able to work and attend college in the United States. Chiappari testified that he laid out three options for plaintiff and his family: everyone in the family would keep their green cards, everyone would surrender them, or plaintiff individually would surrender his and the rest of his family would retain theirs. Chiappari testified that plaintiff understood the options and

risks involved with each option and would think it over. On January 31, 2012, plaintiff notified senior RB management of his intention to surrender his green card.

In February of 2012, Nash summoned plaintiff to London for a meeting. Plaintiff alleges that Nash and Fasano, acting on the orders of Rakesh Kapoor ("Kapoor"), Chief Executive Officer of RB Group, told plaintiff that he had been dishonest in failing to disclose his intention to surrender his green card in order to receive additional compensation during negotiations for the Singapore position and avoid tax liability. When asked whether he thought plaintiff had been dishonest when intending to surrender his green card, Nash testified, "I concluded that it was very likely [plaintiff] had been dishonest and in my thinking he had been dishonest ... the key fact is he did not tell me he intended to surrender his green card and yet he understood clearly that the offer had been made for Singapore was inflated by a substantial number of dollars because we had taken on the assumption he would be taxed as a US resident."

Plaintiff alleges Chiappari disclosed the advice to RB, which RB then used to justify plaintiff's termination. In that regard, Chiappari admitted to talking with Nash and Fasano on February 6, 2012, about plaintiff's tax status. In a letter signed by Nash, dated February 7, 2012, RB terminated plaintiff's position. Plaintiff alleges that his termination under the letter of intent was unjustified as his actions did not rise to the level of "misconduct" and that he was responsible under Section 15.02 of the letter of intent for his own tax arrangements. Alternatively, plaintiff alleges defendant justified this termination under the employment agreement with RB LLC, even though it had expired and plaintiff was formally working for RB Singapore.

In sum, plaintiff asserts that defendant never intended to continue employing him after eliminating his position at RB LLC and defendant engaged in a "bait-and-switch" designed to terminate his employment without notice and without paying him as required by the agreement. Plaintiff argues that the Singapore

position was created as a pretext to justify firing him from RB LLC without six months' notice or compensation, and thus save costs as part of a corporate restructuring.

Plaintiff commenced the instant action against RB LLC, RBCS and Reckitt Benckiser Group PLC (RB Group) (collectively referred to as RB LLC or defendant) for wrongful termination on January 30, 2015, in Essex County. His complaint alleges that defendant's stated basis for terminating his employment was a pretext to avoid paying him a redundancy package. Plaintiff is seeking damages under theories of fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and tortious interference.

The facts that are pertinent to this change of venue motion are as follows. Plaintiff is a French citizen who holds a United States green card and is currently domiciled in Irvine, California. During the course of his employment at RB LLC and its affiliates, plaintiff held positions in Belgium, England, Spain, and Parsippany, New Jersey. RB LLC is a Delaware Limited Liability Company registered in Mercer County, New Jersey with its principal place of business in Morris County, New Jersey. RB LLC has no registered locations in Essex County.

It is uncontested that all events leading up to plaintiff's termination occurred outside of Essex County. Specifically:

1. Plaintiff was employed at RB LLC's Morris County Office.

2. Plaintiff and RB LLC entered into a letter of intent regarding his employment with the Singapore Affiliate while he was working in Morris County.

3. The decision to terminate plaintiff's employment was allegedly made in Cape Town, South Africa.

4. Employees of RB LLC accused plaintiff of fraudulent misrepresentation and terminated his employment during a meeting in England.

The cause of action did not arise in Essex County, the plaintiff does not reside in Essex County, and defendant has no registered locations in Essex County. Rather, plaintiff's basis for laying venue in Essex County is *Rule* 4:3–2(B), in that RB LLC "actually does business" in Essex County.

During oral argument on defendant's motion to change venue, the court determined, as an initial matter, that venue is proper for limited liability companies where the company actually does business. Accordingly, the issue during oral argument focused on the extent of business and contact defendant's sales representatives had with Essex County, as it appeared undisputed that was the only business contact with the county that might satisfy the "doing business" requirement. Because the parties had not conducted discovery relating to the issue, or briefed it in their underlying motion papers, the court denied the application without prejudice to afford the parties the opportunity to perform discovery and renew the change of venue motion thereafter. The court specifically directed defendant to submit to plaintiff either a deposition or affidavit related to its pharmaceutical sales representatives and their contact with Essex County.

Having conducted the aforementioned discovery, defendant now brings its renewed motion to change venue.

## ARGUMENTS OF THE PARTIES

Defendant argues that venue should be changed from Essex County under *Rule* 4:3-3(a)(1) (venue not laid in accordance with *Rule* 4:3-2) because: (1) RB LLC's business activities in Essex cannot form the basis for laying venue as the "actually doing business" requirement of *Rule* 4:3-2 applies only to corporations; and (2) even if the "actually doing business" requirement of *Rule* 4:3-2(b) applied, RB LLC's business activities in Essex County are insufficient to satisfy the requirement. In support of its latter argument, defendant submits the affidavit of Lisa Sepulveda, RB LLC's Sales Director of Healthcare who is responsible for supervising the activities of defendant's Respiratory Sales Representatives (RSRs) in the United States. Defendant asserts that Sepulveda's affidavit reveals the de minimis contact its RSRs have with Essex County and, in effect, confirms its argument that defendant's business activity in Essex County is insufficient to lay venue.

In opposition, plaintiff avers that defendant's business activities in Essex County are sufficient to satisfy the doing business requirement. Plaintiff argues that defendant has strategically downplayed the amount of business its RSRs perform in Essex County by submitting the affidavit of an employee, Sepulveda, who works in Florida and has no actual knowledge relating to the "detail calls" performed by the RSRs in Essex County. Plaintiff also asserts that, in relation to the RSR's activity in Essex County, the test should not be a relativity test that analyzes what percentage of RB LLC's overall nationwide RSR activity occurs in Essex County. Plaintiff argues that such a relativity test creates unfair results that are against public policy. In that regard, plaintiff urges the court to adopt an absolute rule that would allow venue for any claim against RB LLC even if one RSR visit occurred in Essex County. Plaintiff also argues that the court should apply the factors enumerated under the New Jersey Corporation Business Tax Act and employed by the Division of Taxation in determining whether a corporation does business in New Jersey such that it should be taxed. Alternatively, plaintiff argues that defendant's motion should be denied because Essex County is the most convenient venue for the parties. Finally, plaintiff requests, by way of cross motion, that should this court determine that Essex County is not a proper venue, the court should stay its decision and compel defendant to produce the additional discovery requests made by plaintiff in relation to its business contacts with Essex County.

## DISCUSSION

### I. Motion to Change Venue

Proper venue in a civil action is governed by *Rule* 4:3–2, which provides, in pertinent part, that "venue shall be laid in the county in which the cause of action arose, or in which any party to the action resides at the time of its commencement." *R.* 4:3–2(a)(3).

Once venue is laid, a change in venue may be granted in the following circumstances: 1) if the venue is not laid in accordance

with *Rule* 4:3–2; or 2) if there is a substantial doubt that a fair and impartial trial can be had in the county where venue is laid; or 3) for the convenience of parties and witnesses in the interest of justice. *R.* 4:3–3(a). Where venue was improperly laid, a motion for change "should be routinely granted." Pressler & Verniero, *Current New Jersey Court Rules*, comment to *R.* 4:3–3 (2016).

■ When a venue selection is challenged, the party that bears the burden of demonstrating good cause for changing venue or denying the change depends on the basis of the motion. "[I]f the motion is made pursuant to *Rule* 4:3–3(a)(2) or (3), the movant has the burden of demonstrating good cause for the change. If the motion is made pursuant to *Rule* 4:3–3(a)(1), the respondent has the burden of demonstrating good cause for not making a change." Pressler & Verniero, *supra*, comment to *R.* 4:3–3 (citation omitted).

II.  The Court Has Already Determined That a Limited Liability Company is Deemed to Reside Where it is "Actually Doing Business" For Purposes of Venue

As discussed, *supra*, the court determined and held on the record that it would apply the "actually doing business" rule to defendant's motion to change venue. The court already determined that plaintiff is entitled to bring suit against defendant in any county in which it is actually doing business, notwithstanding the fact that defendant is an LLC and not a corporation. The court will now provide its reasoning for coming to that decision.

*Rule* 4:3–2(b) states that, for venue purposes, a corporation is deemed to reside "in the county in which its registered office is located or in any county in which it is actually doing business." *R.* 4:3–2(b). It does not address, however, where an LLC is deemed to reside for the purpose of laying venue. As there is no New Jersey case law addressing this issue, it presents a matter of first impression in this court.

Defendant argues that venue was improperly laid in this action from its inception because there is no nexus to Essex County

under *Rule* 4:3–2. Defendant asserts that the "actually doing business" residency prong under *Rule* 4:3–2(b), plaintiff's only basis for laying venue in Essex, is inapplicable in this case because that requirement applies exclusively to incorporated entities. Defendant avers that *Rule* 4:3–2(b) limits the applicability of the "actually doing business requirement" to incorporated entities by specifying that "a <u>corporation</u> is deemed to reside" where it actually conducts business (emphasis added). In defendant's view, had the New Jersey Supreme Court intended to address the residency of LLCs for venue purposes, it would have changed the rule to do so. For the reasons that follow, the court finds this argument to be unpersuasive.

In *Denver & R. G. W. R. Co. v. Bhd. of R.R. Trainmen*, 387 *U.S.* 556, 87 *S.Ct.* 1746, 18 *L.Ed.*2d 954 (1967) the United States Supreme Court addressed this argument in opposition to applying the then-existing federal venue rule to an unincorporated labor union. As with *Rule* 4:3–2(b), the federal venue rule at issue in *Denver & R. G. W. R. Co.* specified that a corporation be deemed to reside where it conducts business, but it failed to address the residency of unincorporated entities. In electing to extend the "doing business requirement" to an unincorporated labor union, the Court reasoned that:

> It can be argued, as respondent does, that had the 1948 Congress intended the expanded definition of corporate residence to apply to labor unions and other unincorporated associations, it would have said so. But ... saying that Congress did not intend to "change" the venue law with respect to unincorporated associations assumes a settled meaning to the prior law. This was not the case. There was no settled construction of the law in the courts in 1948, and there is none yet. Nor was there anything to indicate that Congress had considered a labor union's residence to be in only one place or had ever intended a limited view of residence with respect to unincorporated associations.

[*Denver & R. G. W. R. Co*, *supra*, 387 *U.S.* at 561, 87 *S.Ct.* at 1749, 18 *L.Ed.*2d at 959].

In the absence of clear congressional directive, the Court held that an unincorporated labor union may be sued, "like the analogous corporate entity, wherever it is "doing business." *Id.* at 561, 87 *S.Ct.* at 1749, 18 *L.Ed.*2d at 959.

In the present matter, both parties cite allegedly analogous sections of the court rules to support their interpretations of R. 4:3–2(b). Defendant directs the court to *Rule* 4:4–4 as it expressly distinguishes between incorporated and unincorporated entities with respect to service of process. Plaintiff counters that *Rule* 6:1–3, which governs venue in the Special Civil Division, applies the "doing business requirement" to all "business entities" without regard to incorporation. Independently, neither of these arguments is persuasive as they do not directly address venue in the civil context. Taken together however, the coexistence of these Rules evidences the lack of clear directive from the New Jersey Supreme Court as to the residency of unincorporated business entities under *Rule* 4:3–2(b).

In the absence of any clear directive from the New Jersey Court Rules, this court finds that an LLC may be sued, like the analogous corporate entity, wherever it actually does business under *Rule* 4:3–2(b). Indeed, the policy underlying the "actually doing business" requirement is that such an entity can reasonably foresee being sued in forums where it conducts business operations. *See Int'l Shoe Co. v. Wash.*, 326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95 (1945). There is therefore no reason why a business entity that benefits from extensive and systemic business conduct in Essex County may not be sued in Essex County merely because it is unincorporated. As such, the court finds that the "actually doing business" requirement of *Rule* 4:3–2(b) applies to both incorporated and unincorporated entities.

III. Defendant Does Not "Actually Do Business" in Essex County as Required by R. 4:3–2(b)

Defendant seeks to transfer venue pursuant to *Rule* 4:3–3(a)(1), on the ground that venue was improperly laid when the case was filed because it does not actually do business in Essex County. Therefore, the burden is on plaintiff, as respondent, to demonstrate good cause for not changing venue by establishing that venue was proper when laid. As plaintiff is a resident of

California and the cause of action arose in Morris County, plaintiff must establish that defendant RB LLC actually does business in Essex County in order for venue to be properly laid in Essex.

The central issue for the court is to determine if defendant's business contacts in Essex County are enough to satisfy the "actually doing business" requirement under *Rule* 4:3–2(b). Neither brief submitted by the parties reveals any New Jersey case that provides guidance in determining what is required to satisfy the "doing business" prong for purposes of venue. Rather, the parties invite the court to employ allegedly analogous authorities in analyzing the issue at hand. Defendant cites to *Bucklew v. G.D. Searle & Co.*, 138 *Ill.*2d 282, 149 *Ill.Dec.* 722, 562 *N.E.*2d 186 (1990), where the Supreme Court of Illinois squarely addressed the issue. Plaintiff argues that reliance on *Bucklew* is misplaced and implores the court to apply the factors utilized by the New Jersey Division of Taxation in determining whether a company does business in New Jersey such that it may be taxed.

■  The court's own research on the issue reveals that, indeed, no New Jersey court has squarely analyzed the sufficiency of a company's contacts in a particular county to determine whether it "actually does business" there for purposes of venue. As such, the analysis of the issue by the Supreme Court of Illinois, although not controlling authority, is more persuasive than the authority set forth by plaintiff. The court disagrees with plaintiff's assertion that the analysis employed to determine if a foreign company should be taxed in New Jersey is analogous to analyzing whether a company may be sued in a particular venue. The court rejects plaintiff's invitation due to the underlying purpose of the venue statute, which is the convenience of litigants and witnesses. *Denver & R.G. W.R. Co., supra*, 387 *U.S.* at 560, 87 *S.Ct.* at 1748, 18 *L.Ed.*2d at 958 ("venue is primarily a matter of convenience of litigants and witnesses"). Indeed, New Jersey's venue statute's requirement that either any party reside in the venue or that the underlying action occurred therein reflects this policy goal. The court thus rejects the invitation to utilize an analysis applicable to

determining whether a company should be taxed in the state, as it finds the purpose underlying both statutes at odds. Moreover, the *Bucklew* court was tasked with analyzing whether a company "actually does business" pursuant to the Illinois venue statute, which is identical to New Jersey's venue statute.[1]

In analyzing whether the subject corporation had sufficient business contacts with the county at issue, the *Bucklew* court first recognized that, pursuant to the Illinois venue statute, venue is proper in any county where one of the defendants resides or where some part of the underlying transaction occurred. The defendant company was a Delaware corporation with its principal place of business in Cook County, Illinois. Pursuant to statute, for purposes of venue, the defendant company could be a resident of any Illinois county in which it maintained a registered or other office or in which they were doing business. *Bucklew, supra,* 149 *Ill.Dec.* 722, 562 *N.E.*2d at 189–90.[2] Because it was undisputed that no part of the underlying transaction occurred in the forum at issue, St. Clair County, the plaintiffs did not reside in St. Clair, and the defendant company did not maintain a registered or other office in St. Clair, the court stated that venue was proper only if the defendant company was doing business in the county.

The *Bucklew* court then made clear that the "doing business" requirement is distinguishable from the contacts with a forum that will warrant an exercise of personal jurisdiction. Citing to its prior decision of *Baltimore & Ohio R.R. Co. v. Mosele,* 67 *Ill.*2d 321, 10

---

[1] The Illinois venue statute states: "Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose."

[2] As discussed, *supra,* New Jersey's corporate residence statute is markedly similar. *Rule* 4:3–2(b) states that for venue purposes, a corporation is deemed to reside "in the county in which its registered office is located or in any county in which it is actually doing business." *R.* 4:3–2(b).

*Ill.Dec.* 602, 368 *N.E.*2d 88 (1977), the court explained that it had already determined that more extensive contacts with the forum is required under its venue statute than under its long-arm statute, due to the legislature's intent to expand personal jurisdiction under its long-arm statute to the extent permitted by the Constitution. *Ibid.* Accordingly, the court held that, for purposes of venue, "the defendant must 'be conducting its usual and customary business within the county in which venue is sought.' " *Id.* at 726, 562 *N.E.*2d at 190.

The affidavits submitted by the defendant company revealed that the one contact it had with the venue was its employment of two sales representatives who called on health care providers in the county. In that regard, the record showed that those representatives constituted less than .4% of the defendant's national sales force. The representatives would take orders for defendant's products and relay those orders to the company but they had no authority to bind the defendant contractually. The record also showed that the defendant had sales in the county, which the court noted as probative due to the fact that the quantity or volume of business done by a company in a county is a relevant consideration in determining, for purposes of venue, whether the company may be deemed to be doing business in the county. *Bucklew, supra,* 149 *Ill.Dec.* 722, 562 *N.E.*2d at 190; *citing Weaver v. Midwest Towing, Inc.,* 116 *Ill.*2d 279, 107 *Ill.Dec.* 685, 507 *N.E.*2d 838, 840 (1987). The record showed that the defendant's sales in the county two years prior had represented 2.5% of its statewide sales and .12% of its national sales for that year. *Ibid.* For the prior year, the defendant's sales in the county represented 2.83% of the company's statewide sales and .13% of its national sales. *Ibid.*

The *Bucklew* court then discussed the prior cases in which it considered the issue of whether a corporation may be deemed to be doing business in a county for purposes of venue. The court noted that it had previously held that doing business "is not automatically established through evidence that the company solicits business from customers within the county or sells goods and

services to customers located there." *Id.* at 727, 562 *N.E.*2d at 191. In *Stambaugh v. International Harvester Co.*, 102 *Ill.*2d 250, 80 *Ill.Dec.* 28, 464 *N.E.*2d 1011 (1984), the court held the defendant company was not "doing business" where the company did not have any manufacturing plants or facilities in the county, it sold its products through independent dealers in the county, and sales in the county for one year amounted to about .05% of the company's overall revenue for that period. *Id.* at 293, 149 *Ill.Dec.* 722, 562 *N.E.*2d 186. In *Gardner v. International Harvester Co.*, 113 *Ill.*2d 535, 101 *Ill.Dec.* 842, 499 *N.E.*2d 430 (1986), the court was faced with the same company and the same contacts that were present in *Stambaugh*, however with additional circumstances. There, the company also purchased supplies from the county, engaged in a variety of programs with local dealers in the county, and mailed rebate checks directly to customers who were located in the county or who had purchased defendant's products from those dealers. The court held these additional contacts to be "merely incidental" to the activities it had already held to be insufficient in *Stambaugh* and thus concluded the company was not doing business in the county for purposes of venue. *Ibid.*

Consistent with its prior decisions, the *Bucklew* court concluded that the business activity shown was insufficient to establish that the defendant was "doing business" in the county for purposes of venue. The court noted that the company's only connection with the county arose from the shipment of its products to customers located there, and from the activities of sales representatives who solicited orders from sales prospects in the county. Regarding the latter connection, the court stated that the solicitation of business by the defendant's sales agents in the county did not support a finding that the defendant was doing business there. *Bucklew, supra,* 149 *Ill.Dec.* 722, 562 *N.E.*2d at 191. Moreover, the court stated, the defendant's sales in the county were "not so extensive" as to warrant a finding that it was doing business there. *Ibid.* In that regard, the court explained that viewing the sales in relative or absolute terms, the sales in the county represented a small proportion of the company's total revenue for the relevant periods

such that it could not satisfy the "doing business" requirement. *Ibid.* Therefore, because the statutory requirements for establishing venue in the county were not met, the court granted the motion to transfer venue.

Here, defendant relies on the affidavit of Terrence J. Farrell, the Associate General Counsel of RB LLC and of Sepulveda, in arguing that its business contacts with Essex County were insufficient for the court to lay venue. Farrell certified that, from 2014 to the present, RB LLC had not owned or rented a storage facility or offices anywhere in Essex County. He certified that RB LLC no longer manufactured goods and therefore did not import raw materials for manufacturing through the Port of Newark or Newark Airport and did not do so in the several months leading up to the filing of this lawsuit on January 30, 2015. He certified that RB LLC sold its products to third parties who distributed or sold its products, and none of its sales were made from Essex County. In addition, Farrell certified that in 2014, .003% of RB LLC's sales nationwide were shipped by a third-party commercial carrier to an address in Essex County, the dollar amount of which was $133,214.

Sepulveda certified that, during the 2014–2015 period, RB LLC employed 67 RSRs nationally, four of whom conducted "detail calls" on doctors in New Jersey, and one of whom made such calls in Essex County. According to Sepulveda, RSRs visit doctors' offices within their assigned territory in order to promote and educate doctors on certain drugs and medications sold by RB LLC. The products promoted by RSRs during the 2014–2015 period were initially purchased from RB LLC by retailers or distributors and were then ultimately sold to consumers by said retailers and distributors. The aforementioned "detail calls" made on doctors by RSRs is the term used by RB LLC to describe visits made to doctors in which medications and products sold by RB LLC were promoted. According to the Sepulveda affidavit, the purpose of these visits was to educate doctors on the clinical attributes of the drugs and their medical uses. Sepulveda certified

that these visits generally consisted of a brief conversation between the doctor and the RSR and typically lasted about two to three minutes each. Among other things, the RSRs asked doctors to recommend the drugs to their patients when medically appropriate. RSRs also provided samples of the drugs to the doctors. RSRs did not, however, take or solicit orders for any products, they did not make any sales, and they had no authority to bind RB LLC contractually.

Sepulveda certified that during the 2014–2015 period, 17,569 doctors in the United States received detail calls from RB LLC RSRs. Of these 17,569 doctors, 1,027 of them were located in New Jersey and 64 doctors were located in Essex County. Moreover, during the same period, RSRs conducted a total of 70,940 detail calls nationwide, 3,722 of which took place in New Jersey and 332 of which took place in Essex County. In sum, the 332 detail calls in Essex County represented .47% of the total number of detail calls made nationwide during the 2014–2015 period.

The court finds that the amount of business contact RB LLC has had with Essex County, evinced by the affidavits of Farrell and Sepulveda, coupled with the nature of the contacts, which were merely incidental to RB LLCs business operations, are insufficient to conclude that RB LLC was "actually doing business" in Essex County. As discussed, the court has already determined that the prevalence of RB LLC's sales representatives in Essex County is the only way plaintiff might succeed in showing RB LLC does business in the county for purposes of venue. This determination was made, in large part, due to the fact that RB LLC is not headquartered in Essex County and does not own offices or property in Essex County. The court also dismissed plaintiff's contention that RB LLC's marketing efforts could constitute "doing business" in the county. In that regard, the court determined that such activity is merely incidental to any sales made in the county and could not form the basis for sufficient business activity on its own. Thus, it was made clear to both parties that the extent of contact defendant's sales representatives

had in Essex County was the only basis on which the "actually doing business" requirement might be satisfied.

Keeping that determination in mind, the court finds the amount of sales made in Essex County and the amount of contact the sales representatives had within the county to be too minimal to satisfy the doing business requirement. This conclusion is buttressed by the Supreme Court of Illinois's reasoning and holdings in *Bucklew, Stamblaugh*, and *Gardner*, which, in the absence of any New Jersey precedent, the court views as persuasive authority. Unlike the sales representatives in *Bucklew*, defendant's RSRs have no authority to actually make sales in the county; rather, their activity is limited to making detail calls on doctors. That activity, in turn, represented merely .47% of its total volume of nationwide sales calls. Further, the defendant in *Bucklew* had $391,542 in sales in the county, representing .13% of the defendant's nationwide sales. Here, in 2014, merely .003% of RB LLC's sales nationwide were shipped to an address in Essex County, the dollar value of which was $133,214. This number is also lower than the .05% of sales made within the subject county in *Stambaugh*. The markedly similar, and indeed low, percentage of business contact made within Essex County when compared with the statistics in *Bucklew, Stambaugh*, and *Gardner* support the conclusion that RB LLC has not been "actually doing business" in Essex County for purposes of venue.

Plaintiff argues that *Bucklew*'s application to the present issue is misplaced because it contends that court erred in formulating a test that compares the nature and extent of the company's contact in the particular county to its activities state and nationwide. Plaintiff also submits that this court should not rely on *Bucklew*'s requirement of more extensive contacts with the forum for purposes of venue because it based that determination on an interpretation of Illinois's venue and long-arm statutes that are not applicable to New Jersey. The court will discuss these contentions in turn.

First, the court does not find the relative analysis formulated by the *Bucklew* court to be flawed and inapplicable merely because it is contrary to the test applied by the New Jersey Division of Taxation. As discussed, the court lends no weight to the relevant factors or test employed by the Division of Taxation in determining whether a company does business in New Jersey, as a whole, in order to tax the company. Second, the *Bucklew* court reasoned that its venue statute required more extensive contacts with the forum than under its long-arm statute due to the legislature's intent to expand personal jurisdiction under its long-arm statute to the extent permitted by the Constitution. That reasoning is applicable to the case at hand because the scope of the long-arm statutes of New Jersey and Illinois are the same. Indeed, both permit the state's courts to exercise jurisdiction to the extent permitted by the United States Constitution. *See R.* 4:4–4(b)(1); 735 *Ill. Comp. Stat.* 5/2–209 (2016). The *Bucklew* court's determination that the venue statute should therefore be construed as more limiting than the long-arm statute is in the court's opinion sound reasoning. Accordingly, the *Bucklew* court's analysis is applicable and persuasive authority to the case at hand.

Plaintiff also attempts to undermine *Bucklew* by citing to *International Harvest Co. v. Goldenhersh*, 86 *Ill.*2d 366, 56 *Ill.Dec.* 78, 427 *N.E.*2d 158 (1981), another Supreme Court of Illinois case that discusses venue. In *International Harvest*, the issue was whether the Supreme Court of Illinois should issue a *writ of mandamus*. *Ibid.* Accordingly, although the issue in the underlying trial court motion was to transfer venue, the central issue for the Supreme Court was to determine "the availability of mandamus or the exercise of [the Court's] supervisory authority to correct alleged errors [by the trial court]." *Id.* at 79, 427 *N.E.*2d at 159. Plaintiff cites to *International Harvest* for the proposition that product placement and advertising conduct in a forum can constitute "actually doing business" for purposes of venue. In that regard, plaintiff states that the Supreme Court of Illinois relied on the trial court's findings in upholding the refusal to transfer venue. Those findings included, among various other contacts, that the

defendant company performed advertising in the forum and reimbursed its dealers in the forum for half of their advertising expenses. The Supreme Court of Illinois did not however rely on those findings in upholding the trial court's decision. Rather, the court made clear that a review of the correctness of the trial court's findings must be made by way of a formal appeal, not by way of mandamus. *Id.* at 82, 427 *N.E.*2d at 162. The court stated, "in the present case, the court must determine if the facts establish that the petitioner is 'doing business' in the county. A review of the correctness of such a determination may be had by the normal process of appeal ... *[m]andamus* may not be used as a substitute for appeal nor can it be used to circumvent the normal appellate process." *Ibid.* Therefore, the trial court's determination was upheld solely due to procedural error rather than on its merits. Plaintiff's attempt to support its position by citing to *International Harvest* is therefore misplaced.

Plaintiff's citation to *International Harvest* is based on its broader argument that RB LLC's alleged marketing and advertising in Essex County evinces the fact that it does business in the county for purposes of venue. In that regard, plaintiff asserts, based upon his own certification and upon information and belief, that RB LLC performs "quality control" over products in Essex County, as well as "consumer research, advertising, and sales incentives" in Essex County. Plaintiff asserts that these allegations not only warrant the denial of RBC LLC's motion to transfer venue, but also warrant the court to compel RB LLC to respond to Plaintiff's discovery requests regarding same. As discussed, *supra*, the court has already determined that any advertising or marketing efforts performed in Essex County are incidental to any sales or business contact with the county and cannot on their own establish that RB LLC does business in Essex County for purposes of venue. That determination is supported by the Supreme Court of Illinois, which squarely dealt with the issue in *Gardner*. However, the court will more fully discuss and analyze the merits of plaintiff's argument relating to RB LLC's advertis-

ing and marketing efforts in Essex County and whether such conduct can constitute doing business for purposes of venue.

Although New Jersey courts have not discussed the effect advertising and marketing have for purposes of venue, they have clearly discussed the effect such activities have in relation to personal jurisdiction. New Jersey courts have emphasized that advertising and marketing conduct in a particular forum may satisfy either general or specific jurisdiction only if such conduct was specifically targeted towards the forum. *See, O'Connor v. Sandy Lane Hotel Co.*, 496 *F.*3d 312 (3d Cir. 2007) (District Court had specific jurisdiction over hotel based on mailings from the hotel to the plaintiff's home, which resulted in the plaintiff booking the massage treatment at issue; the hotel had thus "availed itself" of the laws of the forum through the targeted advertising); *Decker v. Circus Circus Hotel*, 49 *F.Supp.*2d 743, 749 (D.N.J. 1999) (record did not reflect that the defendants had targeted New Jersey in its advertising and therefore, the defendants were not subject to personal jurisdiction in the New Jersey courts); *Mastondrea v. Occidental Hotels Mgmt. S.A.*, 391 *N.J.Super.* 261, 918 *A.*2d 27 (App. Div. 2007) (affirming specific jurisdiction over foreign hotel where (1) a cooperative marketing agreement existed between the hotel's marketing agent and a New Jersey based travel agency and (2) the placement of targeted advertising in the Newark Star Ledger pursuant to the marketing agreement); *Makopoulos v. Walt Disney World*, 221 *N.J.Super.* 513, 535, 535 *A.*2d 26 (App. Div. 1987) ("solicitation directed to New Jersey residents can support jurisdiction over foreign resorts" where the solicitation through advertising was accompanied by direct contact with former guests located in New Jersey). In the absence of any New Jersey precedent relating to marketing/advertising efforts and venue, the court is guided by the principles enunciated by New Jersey courts with regard to personal jurisdiction. However, in doing so, the court is mindful that it must construe the state's venue statute as more limiting than its long-arm personal jurisdiction statute, as the long-arm statute permits jurisdiction over a

non-resident defendant to the extent permitted by the Constitution; the venue statute is clearly not so broad. The court will review plaintiff's arguments relating to RB LLC's advertising and marketing efforts with these guiding principles in mind.

Plaintiff argues that RB LLC's sales force regularly visits stores in Essex County to survey inventory and observe displays of its products. He argues RB LLC also provides incentives to retail outlets in Essex County to improve placement of its products on store shelves. Plaintiff further argues that RB LLC conducts consumer research in Essex County and develops advertising based on such research. All of these assertions are based on plaintiff's own information and belief and are submitted via his certification in support of his opposition to defendant's motion to transfer venue. In that regard, plaintiff requests the court to compel defendant to produce additional discovery relating to these activities.

The court concludes that plaintiff has failed to show, or sufficiently allege, that RB LLC's advertising and marketing efforts in Essex County satisfy the doing business requirement for purposes of venue. Plaintiff has not shown how RB LLC's conduct in Essex County is any different from its conduct in any other county in the state and, therefore, has failed to show how its advertising and marketing conduct is specifically targeted towards Essex County. While the court is aware that plaintiff has requested more detailed discovery relating to these activities, such discovery is unlikely to alter the court's determination. The crucial characteristic of RB LLC's alleged advertising and marketing in Essex County is its general, broad nature in contrast to any specific, targeted conduct. The court does not feel that additional discovery into these activities will change that important fact.

Accordingly, plaintiff's arguments relating to RB LLC's alleged advertising, marketing and related conduct in Essex County are unavailing and, for the same reasons, the court will deny plaintiff's cross-motion to compel discovery relating to same.

Finally, plaintiff argues that RB LLC's motion must be denied because Essex County is the most convenient venue. During oral argument on defendant's initial motion to transfer venue, the court was unpersuaded by plaintiff's assertion relating to convenience, mainly due to the fact that parties and witnesses will be coming from all around the world for this trial, which makes the minor difference in location between Essex County and Morris County essentially irrelevant. In sum, the court was not persuaded that laying venue in Morris County would create the types of hardships or prejudice required to support the conclusion that this matter should not be transferred there. Here, plaintiff submits the same arguments and has again failed to sustain his burden of showing that any inconvenience in laying venue in Morris County constitutes good cause to deny defendant's motion to transfer venue.

## CONCLUSION

In conclusion, for the foregoing reasons, defendant's motion to transfer venue to Morris County is granted.